ACCEPTED
04-14-00542-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
3/5/2015 7:32:09 PM
KEITH HOTTLE
CLERK

## CASE NO. 04-14-00542-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
03/5/2015 7:32:09 PM
KEITH E. HOTTLE
Clerk

# IN THE COURT OF APPEALS
# FOR THE FOURTH JUDICIAL CIRCUIT
# SAN ANTONIO, TEXAS

## CITY OF LEON VALLEY, TEXAS, UNKNOWN EMPLOYEE(S) OF CITY OF LEON VALLEY and IRENE BALDRIDGE
### Appellants

v.

## WM. RANCHER ESTATES JOINT VENTURE, RAFAEL ALFARO, JOSE ALFARO, CARMAN ALFARO, DANIEL BEE, ROBERT CALDWELL, ANNE CALDWELL, DEFERENCE SERVICE BUSINESS, INC., EARL DODERER, SYLVIA DODERER, JAMES DOWDY, BETTY DOWDY, ISAAC ELIZONDO, SUZANNE ELINZONDO, ROBERTO GALINDO, ERMA GALINDO, SHIRL JACKSON, ANNE JACKSON, AND RICARDO A. PADILLA
### Appellees

## APPELLEES' BRIEF

**O. RENE DIAZ**
**DIAZ JAKOB, LLC**
**THE HISTORIC MILAM BUILDING**
**115 East Travis, Suite 333**
**San Antonio, Texas 78205**
**Telephone: (210) 226-4500**
**Facsimile: (210) 226-4502**
**ORD@diazjakob.com**

**COUNSEL FOR APPELLEES**

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF COUNSEL

## *Appellees / Trial Court Plaintiffs*:

Wm. Rancher Estates Joint Venture
Rafael Alfaro
Jose Alfaro
Carman Alfaro
Daniel S. Bee
Robert Caldwell
Anne Caldwell
Deference Service Business, Inc.
Earl Doderer
Sylvia Doderer
James Dowdy
Betty Dowdy
Isaac Elizondo
Suzanne Elizondo
Roberto Galindo
Erma Galindo
Shirl Jackson
Anne Jackson
Ricardo A. Padilla

## *Counsel for Appellees / Trial Court Plaintiffs*:

O. RENE DIAZ, ESQ.
JASON J. JAKOB, ESQ.
DIAZ JAKOB, LLC
THE HISTORIC MILAM BUILDING
115 E. Travis Street, Ste. 333
San Antonio, Texas 78205
Telephone: (210) 226-4500
Facsimile: (210) 226-4502
ORD@diazjakob.com
JJJ@diazjakob.com

_Appellants / Trial Court Defendants:_

City of Leon Valley, Texas
Unknown Employee(s) of City of Leon Valley
and Irene Baldridge

**_Counsel for the Appellants / Trial Court Defendants_**_:_

Patrick C. Bernal
Clarissa M. Rodriguez
Denton Navarro Rocha Bernal Hyde & Zech
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
Telephone:   (210) 227-3243
Facsimile:    (210) 225-4481
patrick.bemal@rampage-sa.com
clarissa.rodriguez@rampage-sa.com

# TABLE OF CONTENTS

IDENTITY OF COUNSEL ....................................................................................2

TABLE OF CONTENTS .....................................................................................4

TABLE OF AUTHORITIES ................................................................................6

STATEMENT OF THE CASE..............................................................................11

ISSUES PRESENTED..........................................................................................12

STATEMENT REGARDING ORAL ARGUMENT ..............................................12

STATEMENT OF FACTS ...................................................................................12

ARGUMENT & AUTHORITIES ........................................................................20

**RESPONSE TO ISSUE NO. 1**:    The trial court properly denied the Plea to the Jurisdiction because the Appellees claims fall within recognized constitutional or statutory exceptions to the City's governmental immunity. ………………………….27

**RESPONSE TO ISSUE NO. 2**:   The trial court properly denied the City's plea to the jurisdiction because Appellees pleaded and proved with competent evidence numerous violations the Texas Open Meetings Act, and the evidence submitted by Appellees on disputed jurisdictional issues must be taken as true, with all doubts resolved in favor of the Appellees. ………………………………………………….………….32.

**RESPONSE TO ISSUE NO. 3:**

The trial court properly denied the City of Leon Valley's Plea to the Jurisdiction because Appellees have properly invoked the Court's jurisdiction for constitutional, nuisance, declaratory judgment and tort claims…………….………………………………..……60

**RESPONSE TO ISSUE NO. 4**

Irene Baldridges' conflict of interest, and other activities outside the scope of her legislative duties are recognized exceptions to her legislative immunity…………........63

CONCLUSION ..................................................................................................69

PRAYER ...........................................................................................................70

CERTIFICATE OF SERVICE ............................................................................71

# TABLE OF AUTHORITIES

**Cases**

*AN Collision Center v. Town of Addison,* 310 S.W. 3d 191
(Tex. App.-Dallas 2010, no pet.) ..........................................................23, 24

*Bland ISD v. Blue,* 34 S.W.3d 547 (Tex. 2000).........................................8

*City of Dallas v. Jennings,* 142 S.W. 3d 310 (Tex. 2004) ......................23

*City of Dallas v. Jill Herz, P.C.,* 363 S.W.3d 896
(Tex. App.-Dallas 2012, no pet.) .............................................................13

*City of El Paso v. Heinrich,* 284 S.W.3d 366 (Tex. 2009) ......................25

*City of Houston v. Williams,* 216 S.W.3d 827 (Tex. 2007) .....................26

*City of Oak Ridge N v. Mendes,* 339 S.W.3d 222
(Tex. App.-Beaumont 2011, no pet.) ..........................................................8

*Continental Coffee Prods. v. Cazarez,* 937 S.W.2d 444 (Tex. 1996)....................7, 8

*Dalon v. City of DeSoto,* 852 S.W. 2d 530
(Tex. App.-Dallas 1992, writ denied)....................................................24, 26

*Galveston Racquet Club, Inc.* v. *City of Galveston,* 178 S.W.3d 167
(Tex. App.-Houston [1st Dist.] 2005, no pet.)....................................28, 29

*Hernandez* v. *City of Lubbock,* 253 S.W.3d 750
(Tex. App.-Amarillo 2007, no pet.)...........................................................28

*Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150 (Tex. 2004) ....30, 31, 32, 34

*Love Terminal Partners, L.P. v. City of Dallas,* 256 S.W.3d 893
(Tex. App.-Dallas 2008, no pet.) ...............................................................15

*In re Perry,* 60 S.W.3d 857 (Tex. 2001)...............................................9, 31

*Salazar v. Morales,* 900 S.W.2d 329 (Tex. App.-Austin 1995, no writ)...............9

*Salazar v. Wilson,* No. 08-13-00171-CV, 2014 WL 1940673

(Tex. App.-El Paso, May 14, 2014, no pet. 11.)...............................9


*San Antonio Water System v. Overby,* 429 S.W.3d 716
    (Tex. App.-San Antonio, 2014, no pet.) ......................................29

*Sanchez v. Board of Adjustment for* City *of San Antonio,*
    387 S.W.3d 745 (Tex. App.-El Paso 2012, reh'g den.).........................l7, 18

*Smith v. City of League City,* 338 S.W.3d 114
    (Tex. App.-Houston [14th Dist.] 2011, pet. ref'd)....................................22

*Sosa v. City Of Corpus Christi,* 739 S.W.32d 397
    (Tex. App.-Corpus Christi 1987, writ den.)................................................21

*State v. Holland,* 453 S.W.2d 871 (Tex. Civ. App.-Tyler 1970, no writ)...............7

*Tex. Ass'n. of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440 (Tex. 1993) .............7

*Tex. Bay Cheny Hill, L.P. v.* City *of Fort Worth,* 257 S.W.3d 379
    (Tex. App. -Fmi Wmih 2008, no pet.)..........................................................30

*Tex. Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217 (Tex. 2004)......8, 9, 19

*Tex. Natural Res. Conservation Comm'n v. White,*
    46 S.W.3d 864 (Tex. 2001) ..........................................................8, 9, 27, 28

*WeatheJford v. City of San Marcos, Tex.,* 157 S.W.3d 473
    (Tex. App.-Austin 2004, rev. den.)...........................................................31

*Wichita Falls State Hasp. v. Taylor,* 106 S.W.3d 692 (Tex. 2003)...................12, 13

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. §101.021 (West 1985) ............................26, 27

Tex. Civ. Prac. & Rem. Code§ 101.0215 (West 2013) ...........................................27

Tex. Civ. Prac. & Rem. Code Ann. §101.057 (West 1985) ...........................29, 30

Tex. Gov't. Code Ann. § 311.005 (West 1989)......................................................11

Tex. Gov't. Code Ann. § 311.034 (West 2005).......................................................11

Tex. Gov't. Code Ann. Ch. 551 et. seq. (West 2013)...............................................14

Tex. Gov't. Code Ann.§ 551.021 (West 2013).......................................................17

Tex. Gov't. Code Ann. § 551.022 (West 2013)...............................................17, 18

Tex. Gov't. Code Ann.§ 551.072 (West 1993)................................................19, 20

Tex. Gov't. Code Ann.§ 551.141 (West 1993).......................................................15

Tex. Gov't. Code Ann.§ 551.142 (West 1993).......................................................14

Tex. Gov't Code Ann.§ 551.143 (West 1993)........................................................15

Tex. Gov't. Code Ann. § 551.144 (West 1999)...........................................16, 19, 20

Tex. Gov't. Code Ann. § 551.146 (West 2013).......................................................13

Tex. Health & Safety Code§ 343.011(c)(11) (West 2013)....................................12

Tex. Lac. Gov't Code Ann., Ch. 171 et. seq...........................................................19

Tex. Lac. Gov't Code Ann. § 171.006 (West 1989) ..................................18, 19, 21

Tex. Occ. Code Ann. § 1101.557 (West 2005) ......................................................20

Tex. Occ. Code Ann.§ 1101.558 (West 2003) .......................................................20

**Constitutional Provisions**

TEX. CONST. art.. I, § 17 ................................................................23

TEX. CONST. art. I, § 19 ................................................................22

## STATEMENT OF THE CASE

Appellants City of Leon Valley and Councilmember Irene Baldridge, are not entitled to immunity because each of the causes of action asserted against the Appellants fall within recognized constitutional and statutory exceptions to sovereign immunity, official immunity and legislative immunity.

Under the applicable standards of review under *Tex. Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217 (Tex. 2004), both Appellant Irene Baldridge's and the City of Leon Valley's claims of immunity fail because there genuine issues of material fact on jurisdictional issues.

With five (5) separate violations of the Texas Open Meetings Act properly alleged and supported by credible evidence, there is no immunity for the City of Leon Valley, because the Texas Open Meeting Act authorizes, actual monetary damages, injunctive, mandamus and declaratory relief as well as attorneys fees and taxable court costs.

Appellant Baldridge's activities, including her failure to disclose her conflict of interest and her failure to recuse herself from the city council vote on the Appellees property all fall within recognized exceptions to the absolute and legislative immunity.

## ISSUES PRESENTED

**Appellees' Response to Issue No.1 Presented**

The trial court properly denied the Plea to the Jurisdiction because the Appellees claims fall within recognized constitutional or statutory exceptions to the City's governmental immunity.

**Appellees' Response to Issue No.2 Presented**

The trial court properly denied the City's plea to the jurisdiction because Appellees pleaded and proved with competent evidence numerous violations the Texas Open Meetings Act, and the evidence submitted by Appellees on disputed jurisdictional issues must be taken as true, with all doubts resolved in favor of the Appellees.

**Appellees' Response to Issue No. 3 Presented**

The trial court properly denied the City of Leon Valley's Plea to the Jurisdiction because Appellees have properly invoked the Court's jurisdiction for constitutional, nuisance, declaratory judgment and tort claims.

**Appellees' Response to Issue No. 4 Presented**

Irene Baldridges' conflict of interest, and other activities outside the scope of her legislative duties are recognized exceptions to her legislative immunity.

## STATEMENT REGARDING ORAL ARGUMENT

Appellees have requested oral argument to assist the Court in considering and deciding important issues of fact and law presented in this case particularly with regard to Appellant Baldridge's conflict of interest and the City of Leon Valley's numerous violations of the Texas Open Meetings Act as well as Appellees various legal and equitable remedies.

## APPELLEES' STATEMENT OF FACTS.

The Appellees own undeveloped land within the City of Leon Valley, Texas,

12

which is referred to as the "property in question."   The Appellees also formed a real estate, joint venture called the Wm. Rancher Estates Joint Venture  (Wm. Rancher Estates) in  order assist in the efforts to jointly market and sell their land. [CR V7 -110-118 ]

The Appellees contracted with Appellee, Daniel S. Bee as a licensed Texas Real Estate Broker/Agent, and his company, Appellee, Deference Service Business, Inc. ("DSB, Inc.") to plat, market and sell the land.  Daniel S. Bee is also the elected and/or appointed Manager and Executive Officer, and authorized agent and representative of the Joint Venture.  Appellee Daniel S. Bee holds an equitable interest in the property due his contractual relationship as a real estate broker with and for the other Appellees. [C.R. V7, 157-173]

Through the assistance of Daniel S. Bee, the Appellees entered into a contract for the sale of land described as the property in question with an entity later identified as Huntington Communities.  The contract for the sale of the Appellees' land was entered into on or about June 21, 2010, for a total price of $1,975,000.00. [  C.R. V7, 157-173]

Appellant, Irene Baldridge is a competing licensed Texas Real Estate Agent, who co-owned, with her late husband, Appellant, ALIE BALDRDIGE (a/k/a AL BALDRDIGE), the company known as International Realty Plus.  As a licensed Texas Real Estate Agent, Baldridge she worked under the brokerage of Appellant, Alie Baldridge (A/K/A AL Baldridge), who was a licensed Texas Real Estate Broker.  Appellant Alie Baldridge was the sponsoring broker for Irene Baldridge and he was

13

responsible for all of acts and omissions of Irene Baldridge as an agent for Alie Baldridge and International Realty Plus. [C.R. V7, 157-173]

Together, Appellants Irene Baldridge and her late husband, Alie Baldridge owned and did business together as International Realty Plus. Accordingly, Alie Baldridge and International Realty Plus are vicariously liable under legal doctrine of *respondeat superior* for any and all of the negligent or intentional acts or omissions done by Irene Baldridge that were done within the course and scope of her duties as a real estate agent; and/or that were done in furtherance of the real estate business; and/or that were done as an owner/officer/director of International Realty Plus. [CR V7, 118-121

Irene Baldridge was also an elected official in the City of Leon Valley, where she served as a city council member for the City of Leon Valley, particularly during the relevant period from July 2010 until at least April 2011. Beginning in or about July 2010, it became apparent to the Appellees that Appellant Baldridge had a serious conflict of interest between her public role as a city council member for the City of Leon Valley, and her private, business role as a licensed real estate agent, owner and/or employee of International Realty Plus. [CR V7, 118-121

In or about July 2010, Appellant Baldridge contacted Appellee, Daniel S. Bee and indicated she represented certain private real estate client(s), including a builder and a developer, who were interested in purchasing and developing the property in question which was also known by its designation in City of Leon Valley documents as Seneca West. [CR V7, 118-121 ; C.R. V7, 157-173]

Appellant, Baldridge met Fred Ballard of Huntington Properties, the purchaser/developer of the Seneca West property on or about May 22, 2010, at the Leon Valley City Hall. They were introduced by Daniel S. Bee, and at that time, Fred Ballard told Baldridge directly that he (Mr. Ballard d/b/a Huntington Communities) had the Seneca West property under contract with a pending request for an R-6 zoning designation with the City of Leon Valley. From that time forward Baldridge knew or should have known that the property in question was under contract for purchase, and that there was a pending application for a zoning designation or re-designation with the City of Leon Valley. . [CR V7, 118-121 ; C.R. V7, 157-173]

In July 2010, Appellant Baldridge contacted and solicited the Daniel S. Bee, stating that she (Irene Baldridge) represented real estate clients who were interested in making an offer to purchase, develop, and build homes on the property in question, which she identified as Seneca West, property that she knew was located within and under the territorial jurisdiction of the City of Leon Valley. Initially, on or about July 22, 2010, in a recorded telephone call, Appellant Baldridge informed Daniel S. Bee that said her clients were prepared to make an offer to purchase the property in question; she later indicated that her clients were prepared to sign a letter of intent to purchase the property in question. . [CR V7, 118-121 ; C.R. V7, 157-173] Subsequently, on or about August 10, 2010, Daniel S. Bee met with Irene Baldridge and the Baldridge Clients at International Realty Plus, to discuss the specific terms of the letter of intent to purchase. At said meeting on or about August 10, 2010, Irene Baldridge and the Baldridge Clients, verbally reaffirmed and confirmed to Daniel S.

15

Bee the existing contractual, agency relationship between Baldridge and the Baldridge Clients were identified as Steve Hanan's son, Bill Jackson of Hanan Development Co. and David Matlock, of M/I Homes. David Matlock of M/I Homes later in June 2011, just 3 months after the vote on city council, submitted an offer to purchase the property for $1.975 Million. At that time in June 2011, David Matlock sought to include Baldridge in the transaction. . [CR V7, 118-121 ; C.R. V7, 157-173]

From the first time that Baldridge solicited the purchase of the property in question on or about July 7, and latter on July 22, 2010, Daniel S. Bee informed Appellant Baldridge that Appellees already had the property in question under a contract of sale to a competing buyer; therefore, Appellant, Baldridge knew or should have known the Appellees were parties to a contract with a competing buyer/ builder / developer to sell the property in question and that the property in question was the subject of an upcoming zoning or re-zoning vote on the Leon Valley City Council. . [CR V7, 118-121 ; C.R. V7, 157-173]

On or about July 7, 2010 Appellant Baldridge acknowledged to the Appellees the serious and direct conflict of interest she had between her role as an agent for prospective buyers of the property in question vs. her role as a city council member for the City of Leon Valley, and at that time, Appellant Baldridge admitted and recognized she would have to abstain and not participate or vote in any official City of Leon Valley action regarding the property in question, because Baldridge knew that she a substantial interest in a business entity of her own, and her business also had a substantial interest in real property (i.e., an equitable interest in the Land that exceeded

16

$2,500), when it was reasonably foreseeable that the action on the matter before council would have a special economic effect on the value of the property in which she and her business entity, and her husband, and their business had an equitable interest . [CR V7, 118-121 ; C.R. V7, 157-173]

The serious conflict of interest for Appellant, IRENE BALDRDIGE became deeper and more apparent on or about **August 10, 2010**, when Appellee Daniel S. Bee was summoned to a meeting with Appellants, Irene Baldridge, and Alie Baldridge at the offices of International Realty Plus. Present at the meeting were Irene Baldridge and Alie Baldridge as well as their real estate clients, including the competing developer and builder previously identified as the "Baldridge Clients," who were the prospective purchasers and/or developers of the property in question.  At the August 2010 meeting, Baldridge's clients directly confirmed to Daniel S. Bee, the existence of Irene Baldridge's agency and representation of them in the proposed transaction and reaffirmed and personally verified their intent to make a *bona fide* offer and sign a letter of intent to purchase the property in question.  Both Baldridge and her clients used their pending offer to purchase and promise to sign a letter of intent to press the Appellee for details of the pending offer to purchase the property in question; however, the details of the pending offer purchase the property in question were not disclosed to the Appellants at that time. . [CR V7, 118-121 ; C.R. V7, 157-173]

Since 2003, and on an ongoing basis up until the present time in 2013, the Appellants, City of Leon Valley, Marcus Semmelmann, Albert & Monica Alcocer, Sharon & Ray Hendricks, Marion Larkin have continuously and wrongfully interfered

17

with the Appellees interest, use and enjoyment of the property in question by repeatedly without any legal right, permit, permission, or due process, invaded the property in question and intentionally or negligently created conditions either on their own adjacent property or on the property in question, that have altered the natural flow of water in the flood plain of Drain 1 – Huebner Creek. The various intentional acts and omissions of the Appellants, jointly and severally, have substantially increased the flow of water and have caused continuous and recurring flooding and ponding on the Appellees' property in question. . [CR V7, 118-121 ; C.R. V7, 157-173]

The Appellants' wrongful conduct has caused a substantial increase in the accumulation of water and flooding on the Appellees' land which has substantially interfered with the Appellees' private use and enjoyment of their own property, and it has caused the Appellees sustain actual damages that were proximately caused the intentional or negligent acts of the Appellants. . [CR V7, 118-121 ; C.R. V7, 157-173]

On or about November 4, 2011, the Appellants invaded the property in question, without any legal right, permit or permission, or due process and with their motorized vehicles and motorized equipment proceeded on Appellees land and began to dig a trench on the property in question, within an area inside the flood plain, which further altered the natural flow of water on the flood plain of Drain 1 - Huebner Creek. The resulting alteration of the natural flow of water on the flood plain has caused serious and permanent damage to the property, by causing continuous and recurring flooding on the property in question, which substantially interferes with the Appellees' private use and enjoyment of the property and/or which permanently limited the Appellees'

18

access to their own property. . [CR V7, 118-121 ; C.R. V7, 157-173]

All of the taking and damaging caused by Appellant, City of Leon Valley was done without permit (inside the flood plain), without any granted easement, and without any legal right to enter, alter or damage the property in question; City of Leon Valley had no permission from any landowner to enter, to take, damage or alter the property in question, and the City of Leon Valley has repeatedly and continuously taken possession of the property in question for an alleged public use, without any just compensation to the Appellees for the taking, damaging or destroying of the Appellees' property.

At the time it committed the foregoing intentional acts, the City of Leon Valley was fully aware and on notice of the lack of legal authority or permission to enter, take, damage or alter the property in question  . [CR V7, 118-121 ; C.R. V7, 157-173]

This unlawful diversion or impounding of the natural flow of water in Drain 1 – Huebner Creek by the Appellants, jointly and severally, has caused serious, permanent and ongoing damage to the property in question by causing continuous and recurring flooding and ponding of the property in question, essentially creating a bog, which substantially interferes with the Appellees' use and enjoyment of the property in question so as to constitute a taking as a whole property, or in the alternative, it has caused damage or destruction to such a significant portion of the property, and to such a degree that it has affected and diminished the value of the entire remainder of the Appellees' property, and/or it has permanently limited the access to the Appellees' property. [CR V7, 118-121 ; C.R. V7, 157-173].

19

The intentional actions of the Appellants who have repeatedly entered the Appellees land without permission, right, privilege or due process have created a public and private nuisance and constitute a trespass for which the Appellees seek real-property damages.

## I.

## ARGUMENT & AUTHORITIES

**Applicable Standard of Review under**

***Tex. Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217 (Tex. 2004)..**

Pleas to the jurisdiction have no specific procedural requirements under the Texas Rules of Civil Procedure. In fact, pleas to the jurisdiction are mentioned only once in the Texas Rules of Civil Procedure, in Rule 85, Tex. R. Civ. P. which states that a "plea to the jurisdiction" may be included in a defendant's original answer. Despite the lack of any specific procedural guidance from the rules, the use of pleas to the jurisdiction has risen dramatically, since 1997, when the Texas Civil Practice and Remedies Code was amended by the addition of Section 51.014 (a)(8), which established a right to interlocutory appeal from either the granting or denial of a plea to the jurisdiction filed by a governmental entity. Due to the lack of any procedural guidance in the rules of procedure, the standards applicable to the review of pleas to the jurisdiction developed through applicable case law.

There are two seminal cases which govern the procedures as well as the applicable standard of review for pleas to the jurisdiction: *Bland Indep. Sch. Dist. v.*

*Blue*, 34 S.W.3d 547, 555 (Tex. 2000) and *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). Prior to the *Bland* and *Miranda* decisions, pleas to the jurisdiction were resolved solely by an analysis of the pleadings, without evidentiary support. See, *Firemen's Ins. Co. v. Bd. Of Regents of Univ. of Tex. Sys.*, 909 S.W.2d 540, 541 (Tex. App.—Austin 1995, writ denied) ("In a plea to the jurisdiction, the trial court must base its decision solely on the allegations in the plaintiff's pleadings"). But beginning with the *Bland* case, trial courts were instructed to resolve pleas to the jurisdiction by considering the evidence submitted. However, the Bland court also cautioned against going too deeply in the merits of the case, "quote from Bland stating courts should not delve too deeply……" *Bland* at 555.

In the *Bland* case, the Supreme Court held that a trial court may consider evidence submitted in connection with a plea to the jurisdiction, but cautioned against going too deeply into the merits of the case. *Id.* at 554. Evidence considered during the plea to the jurisdiction should be limited to jurisdictional issues and not the merits of the case, but because it is sometimes difficult not to go deeply into the merits once the trial court considers evidence at the hearing on the plea to the jurisdiction, the standard of reviewing this evidence was addressed by the Texas Supreme Court in *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).

In *Miranda,* the Court addressed the tension between the governmental entity's

right to seek dismissal through pleas to the jurisdiction against each plaintiff's constitutional right to have their day in court, with fact questions resolved through trial by jury. *Id.* at 228. *Miranda* requires the trial court to examine jurisdictional issues early in order to "determine … whether it has the constitutional authority to decide the case before allowing litigation to proceed." *Id.* at 226. *Miranda* also requires a two-step approach to analyzing pleas to the jurisdiction. *Id.* at 225—228.

<u>Two Step Analysis Required by the *Miranda* Case</u>:

<u>The First Step -- the Sufficiency of the Pleadings Standard</u> - The first step required by the *Miranda* jurisdictional issue analysis applies if the plea to the jurisdiction challenges the sufficiency of the pleadings, in which case the *<u>pleadings must always be construed liberally to give effect to the intent of plaintiff's allegations,</u>* assuming in effect, that if the facts as alleged are true, have the plaintiffs stated a valid waiver sovereign immunity. "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent. *Id" Miranda* at p. 226..

However, *Miranda* makes it clear that if the plea to the jurisdiction is based upon evidence of jurisdictional facts, it may be necessary to order additional discovery to take place on the jurisdictional issues. It is within the trial court's discretion to determine if a fuller development of the facts of the case is necessary

22

before hearing the plea to the jurisdiction. *Id.* at 227.

**Second Step – the Evidentiary Analysis dictated by *Miranda*:**

When the defendant submits a plea to the jurisdiction that contains evidence, if the trial court determines that sufficient facts have already been developed, then the court may simply analyze the evidence submitted and -- similar to the standard for summary judgment -- if the court concludes that a fact issue is created when examining the jurisdictional facts, then the trial court **cannot** grant a plea to the jurisdiction and the issue must be resolved by a jury. *Id.* at 227. Only when the relevant evidence submitted for the plea to the jurisdiction is either undisputed or fails to raise a fact question on the jurisdictional issue, may the trial court rule on the plea to the jurisdiction as a matter of law. *Id.*

If the governmental entity asserts and supports its contention that the trial court lacks subject matter jurisdiction, the plaintiff must merely show there is a disputed material fact regarding the jurisdictional issue. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004) (citing *Huckabee v. Time Warner Entm't Co.,* 19 S.W.3d 413, 420 (Tex. 2000)). Similar to the summary judgment procedure, when the plea to the jurisdiction is denied the plaintiffs preserve their right to have their day in court and present the disputed fact issues to a jury. *Id.* at 228. Also similar to the summary judgment practice evidence, when the appellate court reviews the evidence on appeal, "…[the reviewing court] takes as true all evidence favorable to the nonmovant…[and] indulges every reasonable inference

and resolves any doubt in the nonmovant's favor. *Id.*

In the seminal case for determining a plea to the jurisdiction based upon sovereign immunity *Bland ISD v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). Even in the *Bland*, the Supreme Court ruled that evidence could be considered in determining pleas to the jurisdiction, but at the same time, *Bland* cautioned against about delving too deeply into the merits of the evidence surrounding the jurisdictional issues. The *Bland* Court said that the trial "…court should, of course, confine itself to the evidence relevant to the jurisdictional issue."Id at 555, "But the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction.*" Id.* at 554. The proper function of a plea to the jurisdiction is to determine if the trial court has subject matter jurisdiction to rule on the issues raised by the plaintiffs' pleadings, *Bland* and *Miranda* authorize an inquiry into the evidence as it relates to jurisdiction, but the Plaintiffs should not be required to put on their whole case just to establish jurisdiction. So long as there is viable cause of action that is pleaded and there is a genuine issue of material fact as to some jurisdictional facts, then Plaintiffs have met their burden. Indeed, the Supreme Court restated the standard in the *Miranda* as follows:

"If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. Id at 227-228."…by reserving for the fact finder the

resolution of disputed jurisdictional facts that implicate the merits of the claim or defense, we preserve the parties' right to present the merits of their case at trial." *Id.* at 228.

### Critical Factor of the Standard of Review Omitted by the Appellants

Although the Appellants correctly stated that the standard of review is *de novo,* the Appellants omitted the following critical portions of the standard of review prescribed by the Supreme Court in *Miranda*:

When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

The practical implications of this element of the applicable standard for review for this case are significant because – similar to *Miranda* – the pleading requirements have been met and volumes of evidence have been submitted to support the plea all of which implicate the merits of the case; therefore, the Court must accept all evidence favorable to the Appellees as established and undisputed truth. Any material fact pleaded by the Appellees on which they have submitted even a scintilla of evidence must be treated by the Court as an absolutely true statement, which means that all evidence to the contrary submitted by either the City of Leon Valley or by Irene Baldridge must be disregarded and treated as having no consequence – at least for

25

purposes of the plea to the jurisdiction.

**T**he Appellants incorrectly argue for an evidentiary standard far beyond what is required. Bearing in mind that the Court must treat every fact pleaded must be taken as true… but in this case, the Plaintiffs have done far more than plead numerous causes of action over which the court has jurisdiction, -- in fact the plaintiffs second amdned Petition properly pleads Eleven different causes of action including, but the Plaintiffs have gone a step further. Plaintiffs have also submitted at least four different affidavits proving the prima facie elements of each cause of action. This is far more "jurisdictional evidence" than is necessary to determine the trial court had jurisdiction, and it is actually sufficient evidence to meet the standard for defeating a motion for summary judgment which is not actually before the court in this matter

This is not a case where the jurisdictional facts are straightforward and can be easily discerned as a question of law by way of a plea to the jurisdiction. There are genuine issues of material fact as to jurisdiction that rightfully should be determined by a trier of fact, mainly because the facts are so inextricably intertwined with the merits of the case. The Supreme Court recognized that certain cases where jurisdictional facts are so inextricably intertwined with legitimate controversies over the merits that it is appropriate to defer such questions for the trier of fact. *In Miranda* the Court wrote: "However, in some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact. *See Gates v. Pitts,* 291 S.W. 948, 949 (Tex.Civ.App.-Amarillo 1927, no writ); *Gentry,* 21 S.W. at 570; *see*

26

*also Valentin v. Hosp. Bella Vista,* 254 F.3d 358, 363 n. 3 (1st Cir.2001) (observing that in certain situations, the predicate facts can be so inextricably linked to the merits of the controversy that the district court may "defer resolution of the jurisdictional issue until the time of trial"); *Cameron v. Children's Hosp. Med. Ctr.,* 131 F.3d 1167, 1170 (6th Cir.1997) ("[W]hether a district court has subject matter jurisdiction is a question for the court, not a jury, to decide, even if the determination requires making factual findings, unless the jurisdictional issue is inextricably bound to the merits of the case."); *Williamson v. Tucker,* 645 F.2d 404, 413 n. 6, 416 n. 10 (5th Cir.1981) (suggesting that a federal district court's role in determining jurisdictional facts may be more limited in cases in which the jurisdictional attack implicates the merits of plaintiff's cause of action)."

. **APPELLEES' RESPONSE TO ISSUE NO. 1.**

**The trial court properly denied the Plea to the Jurisdiction because the Appellees claims fall within well recognized constitutional or statutory exceptions to the City's governmental immunity.**

In Issue No. 1, the Appellants are challenging the sufficiency of the Appellees' pleadings. When applying the proper standard of review, then each of the plaintiffs allegations must be taken as true and the court must determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). Construing the pleadings liberally in favor of the plaintiffs and looking to the pleaders' intent. *Id"* *Miranda* at p. 226.

**Standard of Review for Sufficiency of the Pleading**:

Recalling the applicable standard for review of this allegation, the Court must always construe the Plaintiffs/Appellees, pleadings liberally to give effect to the intent of plaintiff's allegations, analyzing whether the plaintiffs have stated a valid waiver of sovereign immunity, assuming the facts as alleged are true. When the pleading sufficiency is challenged, the Court must always be careful not to require the Appellees to prove their entire case on plea to the jurisdiction. The proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction." *Bland* at 554. "…by reserving for the fact finder the resolution of disputed jurisdictional facts that implicate the merits of the claim or defense, we preserve the parties' right to present the merits of their case at trial." *Miranda* at 228. So long as there is viable cause of action that is pleaded and there is a genuine issue of material fact as to some jurisdictional facts, then Plaintiffs have met their burden. Indeed, the Supreme Court restated the standard in the *Miranda* as follows: "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. Id at 227-228

In their Second Amended Petition, the Appellees pleaded the following actions with respect to the City of Leon Valley's intentional actions:

60.     Specifically, on November 4, 2011, the DEFENDANTS invaded the Property in Question, without any legal right, permit or permission, or due process and proceeded to dig a trench on the

28

Property in Question, within an area inside the flood plain, which further altered the natural flow of water on the flood plain of Drain 1 - Huebner Creek. The resulting alteration of the natural flow of water on the flood plain has caused serious and permanent damage to the property, by causing continuous and recurring flooding on the Property in Question, which substantially interferes with the PLAINTIFFS' private use and enjoyment of the property and/or which permanently limited the PLAINTIFFS' access to their own property.

61. All of the taking and damaging caused by Defendant, CITY OF LEON VALLEY was done without permit (inside the flood plain), without any granted easement, and without any legal right to enter, alter or damage the Property in Question; CITY OF LEON VALLEY had no permission from any landowner to enter, to take, damage or alter the Property in Question, and the CITY OF LEON VALLEY has repeatedly and continuously taken possession of the Property in Question for an alleged public use, without any just compensation to the PLAINTIFFS for the taking, damaging or destroying of the PLAINTIFFS' property.

62. At the time it committed the foregoing acts, the CITY OF LEON VALLEY was fully aware and on notice of the lack of legal authority or permission to enter, take, damage or alter the Property in Question.

*Plaintiffs' Second Amended Petition* [CR V7, 127-128].

Appellants claim there is no waiver of immunity, however, this ignores the heart of the Appellees claims that through the <u>intentional actions</u> of entering the Plaintiffs land to dig a trench specifically for the purposes of <u>intentionally diverting</u> the natural

29

flow of water for an alleged public use, the City of Leon Valley, knew and intentionally caused water to back up and accumulate upon the Appellees' property. This is the essence of a constitutional taking claim under the Texas Constitution, article 1 section 17, which meets the standard for review for sufficiency of the pleadings under *Tex. Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227-28 (Tex. 2004).

Keeping in mind that the court must indulge in every inference in favor of the Appellees, there is no immunity for such claims under the Texas Constitution, Article I, Section 17 of the constitution. In the *City of Dallas v. Jennings*, 142 S.W. 3d 310 (Tex. 2004), the Supreme Court held, "…[W]hen a governmental entity physically damages private property in order to confer a public benefit, that entity may be liable under Article I, Section 17 if it (1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action -- that is, that the damage is necessarily an incident to, or necessarily a consequential result of the government's action." *City of Dallas v. Jennings*, 142 S.W.3d 310, 315-16 (Tex. 2004) Appellees have clearly pleaded a cause of action against the City of Leon Valley that is permissible under Article I, Section 17 of the Texas Constitution.

A nuisance claim can only be brought against a governmental entity if that nuisance rises to the level of a constitutional taking or unless governmental immunity is specifically waived by the Texas Tort Claims Act. See *City of Dallas v. Jennings*, 142 S.W.3d 310, 315-16 (Tex. 2004); see also *Gen. Servs. Comm'n v. Little-Tex Insulation*

30

*Co.,* 39 S.W.3d 591, 598 (Tex. 2001) (to establish takings claim a claimant must prove governmental entity intentionally performed certain acts that resulted in ″taking″ of property for public use).  In effect, the takings clause waives governmental immunity for certain taking claims. See *City of Dall. v. VSC, LLC*, 347 S.W.3d 231, 236 (Tex. 2011);  *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). To prevail on a taking claim, the plaintiff must prove the ″governmental actor acted intentionally to take or damage property for a public use.″ *Holland*, 221 S.W.3d at 643;

The Supreme Court has also held that cities may be ″…held liable for depreciation in value of land and for physical discomfort resulting from nuisances in the exercise of governmental functions…″ such as digging of ditches for the purposes of improving or altering drainage as alleged by the Plaintiffs/Appellees in several different sections of the Second Amended Petition  [CR  V7,  127-128]

Municipal liability in such cases is ″bottomed on the inhibition of the Constitution, both Federal and State, that property cannot be appropriated without due compensation, even  though  appropriated in the exercise of governmental functions ″ *Gotcher v. City of Farmersville*, 139 S.W.2d 361, 362-363 (Tex. Civ. App.--Dallas 1940, writ granted) *aff'd* 137 Tex. 12, 151 S.W.2d 565 (Tex. 1941).

When the proper standard of review is applied to each of the Issues outlined in Appellants Brief, it becomes obvious that the trial court properly concluded it subject matter jurisdiction over each of the Appellees claims against the Appellants. .

**RESPONSE TO ISSUE NO. 2:** **The Trial Court Properly Denied The City's Plea To The Jurisdiction Because Appellees Pleaded and Proved With Competent Evidence Numerous Violations The Texas Open Meetings Act, and The Evidence Submitted By Appellees On Disputed Jurisdictional Issues Must Be Taken As True, with All Doubts Resolved In Favor Of The Appellees.**

## Importance of the Miranda Analysis for Issue No. 2.

Perhaps more than on any other issue raised by the Appellants' Brief, the correct application of the standard of review dictated by the *Miranda* analysis is outcome determinative on Issue No. 2, which deals with the Appellees' claims under the Texas Open Meetings Act ("TOMA"), Chapter 551 of the Texas Government Code. On Appellants' Issue No. 2 – the Appellees as well as Baldridge and the City of Leon Valley submitted voluminous evidence, most of which touches on jurisdictional issues, but also goes to the merits of the claim, and on virtually every issue, the evidence submitted by the Appellants and Appellees is diametrically opposed.

A simple comparison of the Affidavit of Irene Baldridge [CR V, ] with the Affidavit of Daniel Bee juxtaposes certain jurisdictional factual disputes: (a) Baldridge denies any interest in the Appellees land and claims she never represented any buyers in relationship to the land while Daniel Bee not only states that Baldridge contacted him to solicit an offer on the land, but he offers a telephone recording transcript of the conversation, and he attended a meeting to discuss the terms of the bargain. This is

32

critical to the jurisdictional issues because Baldridge never disclosed to the City or to any other city council members that she had been in negotiations to purchase the land or that she represented potential buyers. If Daniel Bee's facts are taken as true, -- as they should be under the *Miranda* disputed evidence test -- then Baldridge had serious conflict of interest that should have been disclosed, and Baldridge should have abstained from the vote on zoning the land. If disqualified from the vote on the land, then Baldridge also had a legal and moral duty not to participate in any executive session that dealt with or touched on the land issues, or contractual or personnel issues that dealt with land transaction issue. For instance, interviews of job candidates for the position of city manager took place during January through April 2011 (See CR V ), and the city manager's job includes review of all contracts that deal with tax abatement and development issues within the City of Leon Valley. The city manager would have direct input and negotiating authority on land development and tax abatement issues for the city, all of which directly affects zoning issues. During this period of time between January through April of 2011, the City had over twelve executive sessions and Baldridge participated in most if not all of them. (See the list of Executive Sessions derived from the review of record produced by Leon Valley.]. Baldridge's conflict of interest should have been disclosed, and she should not have participated in any executive sessions dealing with land acquisition, zoning, or any contracts or personnel issues such as city manager, whose position would have such a direct impact upon all future zoning, land development and tax abatement issues for the

City of Leon Valley. The land in question in this case was a tract of approximately 70 acres, with a value of approximately $1.95 Million, and for a small city such as Leon Valley, the economic impact was estimated to be in the tens of millions of dollars. [See the Affidavit of Daniel Bee,

Baldridge denies the representation of buyers for the land because her entire immunity defense relies upon the non-existence of that fact, but yet, Appellee Daniel Bee recounts two direct encounters with Baldridge prior to the vote before city council in which she not only admits to representing buyers for the land, but she actually solicits a sales price and sets up a meeting to discuss further terms. The genuine issues of material fact are obvious, and the *Miranda* analysis requires, "[w]hen reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, [the court] take[s] as true all evidence favorable to the nonmovant. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). [The court] indulge[s] every reasonable inference and resolve any doubts in the nonmovant's favor. *Id."* *Miranda* at 228.

Whether the Defendants' Plea to the Jurisdiction is analyzed under the sufficiency of the pleading standard or under the evidentiary standard required by *Texas Department of Parks & Wildlife v. Miranda*, 133 S.W.3d 217 (Tex. 2004), the trial court clearly has subject matter jurisdiction over the Plaintiffs' five (5) separate TOMA violations, which serve as the basis for injunctive relief, the declaratory relief, the mandamus relief, as well as the monetary relief, attorneys fees and court costs that

Plaintiff/ Appellees would be entitled to if they prevail on the TOMA causes of action.

**Issue No. 2A**. **The Open Meetings Act Specifically and Impliedly Authorizes recovery of Monetary or Economic Damages.**

Appellants admit that TOMA specifically authorizes recovery of monetary damages, Sec 551.142. However, this narrow analysis engaged in by the Appellants ignores the obvious: All of the other legal and equitable remedies authorized by TOMA have a direct, and sometimes indirect monetary or economic impact upon the Plaintiffs. In our case, the shear monetary value or economic impact of the equitable relief sought for violations of TOMA far outweighs the out-of-pocket losses or monetary damages amounts sustained by the Plaintiff/Appellees. For instance, one equitable remedy specifically authorized by TOMA, the simple remedy of declaring void the illegal vote in which Baldridge participated, notwithstanding her admitted conflict of interest, a remedy specifically authorized by TOMA section 551.141, could result in a successful sale of the land, whose value has been estimated to be approximately $1.95 Million. Attorneys' fees, another remedy specifically authorized by TOMA, sections 551.142, 551.146, has an economic or monetary value to the Appellees which could easily exceed $100,000.00. It is therefore simplistic and denying the obvious to argue that the remedies authorized by TOMA would not result in a direct economic and monetary benefit to the Plaintiff/Appellees should they prevail in this matter.

Plaintiff/Appellees have properly pleaded in their *Second Amended Original Petition* violations of TOMA, and Plaintiff/Appellees have sought the various forms of

equitable and legal remedies, including but not limited to injunctive relief, mandamus relief, declaratory judgment, and attorneys fees and court costs. Each of these remedies is specifically authorized by statue. Section 5521.142 of TOMA provides:

(a) An interested person, including a member of the news media, may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of this chapter by members of a governmental body.

(b) The court may assess costs of litigation and reasonable attorney fees incurred by a plaintiff or defendant who substantially prevails in an action under Subsection (a). In exercising its discretion, the court shall consider whether the action was brought in good faith and whether the conduct of the governmental body had a reasonable basis in law.
Texas Open Meetings Act, Sec. 551.142

The right to seek declaratory judgment under the Texas Uniform Declaratory Judgments Act, chapter 37 of the Texas Civil Practice & Remedies Code, for violations of TOMA has also been recognized by the Texas courts *Bd. of Trs. v. Cox Enters., Inc.*, 679 S.W.2d 86, 88 (Tex. App.—Texarkana 1984), *aff'd in part, rev'd in part on other grounds*, 706 S.W.2d 956 (Tex. 1986) (recognizing news media's right to bring declaratory judgment action to determine if board had violated the Act); *see also City of Fort Worth v. Groves*, 746 S.W.2d 907, 913 (Tex. App.—Fort Worth 1988, no writ) (concluding that resident and taxpayer of city had standing to bring suit for declaratory judgment and injunction against city for violation of the Act).

The Plaintiffs live pleading, the ***Plaintiffs' Second Amended Original Petition*** stated valid causes of action against City of Leon Valley & Irene Baldridge for which they have no immunity. Specifically, Plaintiffs have pleaded at least five (5) separate

36

violations of the Texas Open Meetings Act, Chap 551, Texas Gov't Code. Neither the City of Leon Valley nor Irene Baldridge has immunity for violations of Chapter 551 of the Texas Government Code, the "Texas Open Meetings Act" ("TOMA"). Texas courts have uniformly held, "[t]he Open Meeting Act expressly waives sovereign immunity for violations of the [A]ct." *Hays Cnty. v. Hays Cnty. Water Planning P'ship,* 69 S.W.3d 253, 257 (Tex. App. – Austin 2002, no pet.); see also, *Riley v. Comm'rs Ct.,* ____ S.W.3d ___, No. 03-11-00276-CV, 2013 WL 2348272 at *1-2 (Tex.App. – Austin May 23, 2013, no pet.).

**APPELLEES' RESPONSE TO ISSUE NO. 2 B AND 2 C:** **At Least Five (5) Separate Violations of Texas Open Meetings Act were Properly Pleaded and Supported by Competent Evidence.**

In the *Second Amended Petition*, the Plaintiffs have alleged at least five (5) separate violations of TOMA for which there is no immunity, the violations of TOMA committed by the City of Leon Valley and Irene Baldridge include the following:

(a) Prohibited Participation in an Executive Session and Vote in violation of TOMA Sec. 551.072 & Sec. 551.087;

(b) Alteration of Public Records – stated as a Failure to Prepare and Keep Minutes or Make a Recording of an Open Meeting in compliance with TOMA, which is a violation of TOMA Sec. 551.021;

(c) Failure to Make a Complete Copy of the Minutes or Recordings of an Open Meetings Available for Public Inspection, which is a violation of TOMA Sec. 551.022;

(d) Prohibited Participation in a Closed Meeting in violation of TOMA Sec. 551.144; and

(e) Conspiring to Circumvent TOMA in violation of the Texas Common law as articulated by the San Antonio Fourth Court of Appeals in *Willman v. City of San Antonio,* 123 S.W.3d 469 (Tex. App. –San Antonio 2003, pet. denied).

37

There are at least five (5) separate TOMA violations established through competent evidence submitted by Appellees. [See the Affidavits of Elizabeth Bee, C.R. V7, 182-183 and Daniel Bee C.R. V7, 157-173] Keeping in mind that Appellees requested additional discovery on these issues, but were repeatedly denied the right to conduct more discovery on these disputed issues the Appellees only option was to gather and submit controverting Affidavits and to point out the gaps, omissions, alterations, adulterations and/or missing records that were held back by the City of Leon Valley.

Under applicable standards of review, all reasonable inferences that can be drawn in favor of the Appellees from the evidence submitted must go in favor of the Appellees. From the records submitted by the City of Leon Valley, the trial court could draw inferences that numerous records were missing or intentionally held back by the City of Leon Valley which would implicate violations of the Local Government Code and the Texas Open Meetings Act by the City of the Leon Valley and by Council Member Irene Baldridge.

The missing minutes and agendas are all reasonably calculated to lead to the discovery of admissible evidence on the questions of whether Defendant Baldridge participated in prohibited executive sessions that dealt with any matters touching upon real estate purchases, property development, drainage issues, tax abatement or TIF's(Tax Increment Financing). If Baldridge did attend any of these meetings then she and the City of Leon Valley committed multiple violations of the Texas Open

Meetings Act (TOMA) for which there is no immunity. Appellees are entitled to inference in their favor from the missing records, especially when the records are produced so selectively by the City.

Regarding the five (5) Executive Sessions that Irene Baldridge did participate in, although the City Council Agenda and Minutes carefully describe the intended purpose of the meetings as either discussion of "pending litigation" or "personnel matters," the labelling of the subject matter of executive sessions was a subterfuge, because in each case the subject matter of the meeting undoubtedly touched upon real estate matters. Based upon information and belief, the litigation in question, mentioned in meeting minutes, involved a lawsuit that included zoning and tax abatement issues; and the executive sessions dealing with a "personnel matter" involved the recruitment, interviewing and hiring of a new City Manager for the City of Leon Valley.

There was even an executive session held on March 1, 2011, the same evening as the City Council vote on zoning. Although the stated subject matter of the executive session was personnel issues, but personnel issue was the hiring of a City Manager, whose duties have to do with real estate, tax abatement, TIF (Tax Increment Financing), and other economic development issues. It defies logic for the City of Leon Valley to maintain that the executive sessions dealing with the Personnel issue of a City manager did not touch upon real estate or economic development issues when:

a) The City Manager's duties included handling numerous real estate related matters, such as the calculation of TIF (Tax Incremental Financing) Proposals,

which was one of the primary methods used to subsidize real estate development in the City of Leon Valley;

b) Both Irene Baldridge and the City Manager served together on the Tax Abatement Team, which was charged by the Council on January 4, 2011, to investigate how the city could assist in the development proposals being brought to the City Council;

c) The City Manager is the representative of the City who was supposed to sign the Real Estate Development Agreement with the developers in the case in question; therefore, the candidate for City Manager would need to have extensive knowledge of real estate development issues.

By disguising the five (5) executive sessions in which Irene Baldridge participated in the city council meetings leading up to the March 1, 2011, vote as either "litigation or "personnel matters" in the agenda or in the minutes, the City of Leon Valley was misleading the public, and in effect, conspiring to circumvent the requirements of TOMA which require a true and accurate statement of the intended scope of the executive session be stated in the agenda and minutes. This separate and distinct violation of TOMA carries no immunity and subjects the City of Leon Valley and Irene Baldridge to liability. These allegations of additional TOMA violations also support the need to conduct additional discovery to obtain the certified agendas and the audio recordings of each executive session in question, which are a minimum of five (5) executive sessions, and perhaps as many as eight (8) additional, or as many as thirteen (13) additional executive sessions, an average of one executive session during each meeting for which the agendas and minutes are missing.

40

**Violation of the Spirit of TOMA:**  The core purpose of TOMA is to enable the public to have access to the actual decision-making process of its governmental bodies. *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762, 765, Tex. Sup. Ct. J. 804 (Tex. 1991); *Cox Enter. Inc. v. Board of Tr. Of Austin Indep. Sch. Dist.,* 706 S.W.2d 956, 960, 29  Tex. Sup. Ct. J. 316 (Tex. 1986).   The provisions of TOMA are mandatory and are to be liberally construed in favor of open government. *Willman v. City of San Antonio*, 123 S.W.3d 469, 473 (Tex. App.—San Antonio 2003, pet. denied).

In *Willman*, several municipal judges sued the city for violations of the city charter and the Texas Open Meetings Act (TOMA) when the city council passed an ordinance recommending appointment of new judges.  The Court determined that even though the ordinance was ultimately passed in an open meeting, because the vast majority of the deliberations leading up to the passing of the ordinance took place in closed, committee meetings, this process **violated the spirit of the Act** and was therefore, not exempt from the requirements of the TOMA.  This Court  stated "TOMA requires 'openness at every stage of a governmental body's deliberations' because the citizens of Texas are entitled to know not only what government decided but also to observe how and why every decision is enacted.  The Court further stated "[t]he provisions of TOMA are mandatory and are to be liberally construed in favor of open government." *Id.*

Under this standard, Council Person Baldridge has violated the spirit of the TOMA and has attempted to circumvent the requirements of TOMA by ensuring that

her agreement with her real estate clients or buyers was verbal and not put in writing. However, Counsel Person Baldridge represented to Plaintiff Daniel Bee on multiple occasions that she represented *bona fide* buyers of the property, but then states in her affidavit that she was not required to disclose such conflict because there was no written contract. Council Person Baldridge's actions show that she was aware of the conflict of interest, and that she deliberately and flagrantly attempted to circumvent TOMA by intentionally maintaining a verbal contract for representation, instead of the standard written contract. Furthermore, Council Person Baldridge's failure to disclose her conflict of interest in the matter clearly violates the spirit of the TOMA and deprives the public of access to a complete record of how and why the decision was enacted.

The *Willman* Court recognized a "mandate to liberally construe TOMA's provisions in order to safeguard the public's interest in open government." Id at 479. To allow Council Person Baldridge's actions to stand, unfazed by her deliberate failure to disclose a conflict of interest and her intentional circumvention of TOMA, is to condone the secreting of information from the public for the benefit of a government official, which undermines the spirit and letter of TOMA and *Willman*.

**Judging TOMA Violations**

*Hays County v. Hays County Water Planning Partnership*, 69 S.W.3d 253 (2002 Tex. App. LEXIS 328) states that a governmental entity is not entitled to legislative immunity from an Open Meetings Act claim. In *Hays County*, the Court

explains that the goal of the TOMA is to "provide openness at every stage of a governmental body's deliberations." Id quoting *City of San Antonio v. Aguilar*, 670 S.W.2d 681 (Tex. App. –San Antonio 1984, writ dism'd) Meanwhile, "legislative immunity shields individual legislators from litigation challenging the *substance* of a decision, not the *process* by which it was made. *Id.* The Court concluded that to shield governmental entities from claims under TOMA would "effectively undermine the Act." *Id.*

The *Hays County* case further provides that whether an action taken violates the TOMA is a question to be decided at a trial on the merits and may not be the basis for dismissal in a summary judgment or plea to the jurisdiction. *Gillium v. Santa Fe Indep. Sch. Dist.*, 2011 Tex. App. LEXIS 3607; 2011 WL 1938476, states that "[b]ecause appellants' petition alleged a TOMA violation, and immunity is waved for such claim, the trial court erred by dismissing them for want of jurisdiction."

The Appellees pleaded and submitted evidence in support of five (5) violations of TOMA in the form of affidavits. Specifically, the supporting evidence included, the Affidavit of Daniel Bee dated May 16, 2014, [C.R. V7, 157-173]    the Affidavit of Arthur Reyna dated June 3, 2014, [C.R. V7, 180 ] ;  the  Affidavit of Rudy Garcia dated June 3, 2014, **[    C.R. V7, 178   ]**    and the Affidavit of Elizabeth Bee dated June 3, 2014. [C.R. V7, 182-183 ]  Each of these attached affidavits supports the numerous TOMA violations which are summarized below:

   a) ***Prohibited Participation in Executive Session and Vote,*** which violates the

Texas Open Meetings Act ("TOMA") Sec. 551.072 and the Texas Local Government Code Sec. 171.004 prohibit elected officials from participating in a vote on a matter involving a business entity or real property in which the official has a substantial interest if it is reasonably foreseeable that an action on the matter would have or confer a special economic benefit on the business entity or on the value of real property that is distinguishable from the effect on the public. Texas Local Government Code Sec. 171.004

b) *Failure to Prepare and Keep Minutes or Make a Tape Recording of Open Meeting* is a violation of by failing to prepare or keep <u>complete</u> minutes of the December 28, 2010, open meeting of the Leon Valley Zoning Commission. TOMA § 551.021 requires a governmental body to prepare and keep minutes or make a tape recording of each open meeting and states the minutes must state the subject of each deliberation and indicate each vote, order, decision or other action taken. As supported in the Affidavit of Elizabeth Bee, which is attached to the **Plaintiffs' Appendix,** in Support of the Plaintiffs' claims, on file in this matter, and incorporated by reference, the written minutes of this meeting were incomplete, as they failed to fully state the subject of each deliberation and indicate each vote, order, decision or other action taken. Furthermore, the audio recording of this meeting make and kept by CITY OF LEON VALLEY is incomplete.

c) *Failing to Make Minutes and Tape Recordings of Open Meeting Available for*

44

*Public Inspection:* violates TOMA § 551.022 which provides that the minutes and tape recordings of an open meeting be made available for public inspection on request. Defendant CITY OF LEON VALLEY further violated TOMA and the Local Government Code by failing to make the full, complete recording of the December 28, 2010 meeting of the Leon Valley Zoning Commission available for public inspection. As supported in the Affidavit of Elizabeth Bee, **(C.R. V7, 182-183, see, Appendix),** the recording produced by Defendant CITY OF LEON VALLEY is also incomplete, in that there is recording testimony that is missing, edited or altered. Defendant CITY OF LEON VALLEY's failure to make the full recording available for public inspection, or in the alternative, Defendant CITY OF LEON VALLEY's alteration of the recorded testimony, violates section 551.022 of TOMA.

d) *Illegal Participation in Closed Meeting:* CITY OF LEON VALLEY and BALDRIDGE violated TOMA when IRENE BALDRIDGE wrongfully participated in a closed meeting of the Leon Valley City Council. TOMA §551.144 states that is an offense if a member participates in a closed meeting that is not permitted under TOMA. Because IRENE BALDRIDGE was not permitted to participate in closed meetings due to her conflict of interest regarding the real property at issue, her participation in such closed meetings is a violation of section 551.144 of TOMA.

e) *Conspiring to Circumvent TOMA:* In *Willman v. City of San Antonio,* 123

S.W.3d 469 (Tex. App.—San Antonio 2003, pet. Denied), the Court stated "TOMA requires 'openness at every stage of a governmental body's deliberations' because the citizens of Texas are entitled to know now only what government decided but also to observe how and why every decision is enacted. The Court further stated "[t]he provisions of TOMA are mandatory and are to be liberally construed in favor of open government." Id at 473. Under this standard, Council Person Baldridge has violated the spirit of the TOMA and has attempted to circumvent the requirements of TOMA by ensuring that her agreement with Baldridge's Clients was verbal and not put in writing. Counsel Person Baldridge represented to Plaintiff Daniel Bee on multiple occasions that she represented Baldridge's Clients in seeking to purchase the land at issue, but then states in her Affidavit that she was not required to disclose such conflict because there was no written contract. Council Person Baldridge's actions show that she was aware of the conflict of interest and that she deliberately and flagrantly attempted to circumvent TOMA by intentionally maintaining a verbal contract for representation, instead of the standard written contract. Furthermore, Council Person Baldridge's failure to disclose her conflict of interest in the matter clearly violates the spirit of the TOMA and deprives the public of access to a complete record of how and why the decision was enacted. The *Willman* Court recognized a "mandate to liberally construe TOMA's provisions in order to safeguard the public's interest in open government." Id at 479. To allow Council Person

46

Baldridge's actions to stand, unfazed by her deliberate failure to disclose a conflict of interest and her intentional circumvention of TOMA, is to condone the secreting of information from the public for the benefit of the government.

**APPELLEES RESPONSE TO ISSUE NO. 2 D:** **The City of Leon Valley and Baldridge's Violations of the Texas Open Meetings Act Center on Baldridge's Undisclosed Conflict of Interest.**

Both Appellants and Appellees submitted substantial evidence on the issue of Irene Baldridge's conflict of interest. On the issue of conflict of interest, the Appellees rely upon Affidavit of Daniel Bee dated May 16, 2014, [C.R. V7, 157-173] the Affidavit of Arthur Reyna dated June 3, 2014, [C.R. V7, 180 ] ; the Affidavit of Rudy Garcia dated June 3, 2014, **[ C.R. V7, 178 ]** and the Affidavit of Elizabeth Bee dated June 3, 2014. [C.R. V7, 182-183 which when contrasted with the Affidavit of Irene Baldridge and create factual dispute.

Both sides would likely agree that – if Baldridge genuinely had a "conflict of interest" -- she should have declared it prior to the March 2010 vote on the zoning request and should have abstained from the vote. What both sides most strongly disagree on is whether or not Irene Baldridge genuinely had conflict of interest. Once again, under the applicable standard of review the Appellees should prevail. "[W]hen reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, [the court] take[s] as true all evidence favorable to the nonmovant. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). [The court] indulge[s] every

47

reasonable inference and resolve any doubts in the nonmovant's favor. *Id." Miranda* at 228.   In a plea to the jurisdiction, the Plaintiff/Appellees should never be required to prove their entire case, just to establish jurisdiction. *Bland* at  554-555

Appellees have brought forth Affidavits from the actual participants in the city council vote in question, all of which state that the outcome would have been different if either Irene Baldridge had not participated in the vote,  or if she had declared a conflict of interest prior to the vote.  The statute does not require more in depth proof, or better proof to raise a genuine issue of material fact on this issue.  In fact, there is very little case law interpreting this statute, but to require more proof other than what the Appellees have submitted to raise a genuine fact issue on whether Irene Baldridge had a conflict of interest would be to require the Appellees to go too deeply into the merits and prove their case, when the focus in a plea to the jurisdiction should be to raise a fact issue, which the Appellees have done.  Bland at 554-55; and Miranda 227-28.

### Conflicts of Interest Under Chapter 171 of the Local Government Code

Under Chapter 171 of the Texas Local Government Code, Baldridge had a conflict of interest because she had a "substantial interest" in a matter that was subject of some official action before city council   "Substantial  interest"  in  Chapter  171 Texas Local Government Code,  includes:

> (a) (1) the person owns 10 percent or more of the voting stock or shares of  the business  entity  or owns  either  10 percent  or  more or $15,000 or more of the fair market value of the business entity; or (2) funds received by the person from the business entity exceed 10 percent

48

of the person's gross income for the previous year.

(b) A person has a substantial interest in real property if the interest is an equitable or legal ownership with a fair market value of $2,500 or more.

(c) A local public official is considered to have a substantial interest under this section if a person related to the official in the first degree by consanguinity or affinity, as determined under Chapter 573, Government Code, has a substantial interest under this section.

Section 171.002 Texas Local Government Code.

The nine (9) page **Affidavit of Daniel S. Bee, [C.R. V7, 157-173]**sets forth specific facts, and contains excerpts from the transcripts of telephone conversations with Irene Baldridge in July 2010, in which Mrs. Baldridge admits to having a conflict of interest, and she gathers information on the land in question to have her clients submit a letter of intent to purchase the exact same land that she would later vote on during the March 1, 2011 city council vote. **The Affidavit of Daniel S. Bee [ C.R. V7, 157-173]** clearly contains sufficient, competent, clear, positive and direct evidence, which if taken as true it must be for purposes of a plea to the jurisdiction, will defeat a claim of immunity and will raise a genuine issue of material fact that would invoke jurisdiction and defeat the plea the jurisdiction.

More specifically, Irene Baldridge's own affidavit, combined with the facts contained in the Affidavit of Daniel Bee establishes all of the elements of "substantial interest" under Section 171.002 of the Texas Local Government Code. Specifically, Irene Baldridge admits that she worked for and was married to Alie Baldridge, whom

49

she described as owning the real estate brokerage, International Realty Plus. [Affid of Irene Baldridge] By admitting that she was married to and worked for Alie Baldridge, Baldridge in effect admitted to elements of section 171.002 (a) and (c) because she was married to Alie Baldridge, which meets the test for consanguinity under Chapter 573 of the Government Code, and no other owners or employees other than Alie Baldridge and Irene Baldridge have been identified for the real estate brokerage International Realty Plus.

Additionally, the facts contained in Daniel Bee's Affidavit are sufficient to establish a genuine issue of material fact as to whether or not Irene Baldridge and/or Alie Baldridge and/or International Realty Plus had an interest that was either legal or equitable in real property that exceeded $2,500 in value. Both Irene Baldridge and her late husband Alie Baldridge are alleged to have solicited an offer to purchase land, which was worth approximately $1.975 Million, which would have led to a financial windfall and personal benefit to both Irene Baldridge and her husband Alie Baldridge. The Affidavit and the Amended Petition also describe how Irene Baldridge arranged and conducted a meeting at her own real estate offices in order for three of her real estate clients to negotiate the terms of a letter of intent to buy the Property in Question. The estimated real estate commission on the Property in Question was to be approximately $120,000, but yet, Irene Baldridge concealed all of these previous dealings on the real property matter as well as her and/or her husband's equitable interest in the land from the City of Leon Valley and her fellow council members

50

before proceeding to a vote.

According the Bee Affidavit, because Irene Baldridge had a significant business interest in the land that was being voted on in council and in the business that stood to make tens of thousands of dollars in commissions on the sale of the land, Irene Baldridge had a mandatory duty to declare the conflict in an Affidavit, then to recuse herself and abstain from any action by City Council considering the matter, under the conflict of interest rules outlined in Chapter 771 of the Local Government Code. This disclosure and abstention was not only mandatory, but failure to do so was also a Class A Misdemeanor, and also constituted a violation of the Texas Open Meeting Act.

**The Vote by City Council Involving Irene Baldridge was Voidable**: Texas Local Government Code Section 771.006 renders the vote in which an individual with a conflict of interest participated as voidable by the court if "….the measure that was the subject of an action involving a conflict of interest would not have passed the governing body without the vote of the person who violated the chapter." Section 171.006. After diligent search, counsel could not find any case law interpreting this section, and Appellants citation of *Sosa v. City of Corpus Christi* 739 S.W.2d 397, 405 (Tex. App. – Corpus Christi 1987, writ den'd), is easily distinguishable because it is not interpreting section 171.006 Local Gov't Code. Appellants argue that the calculation required to determine if "the measure would not have passed" is simple arithmetic, but they offer no persuasive or controlling authority stating that is the exclusive method of determining if the "measure would not have passed." By

contrast, Appellees argue that the best evidence of whether a measure might have passed or not is from the participants themselves.

The Affidavits of Arthur Reyna  [C.R. V7, 180] and Rudy Garcia [C.R. V7, 178] meet the test of raising a genuine issue of material fact on the issue of whether the measure before city council would not have passed.   Where there is conflicting evidence on the same issue, the evidence offered by the non-movant must be taken as true. *Miranda* at  228.

The **Affidavit of Arthur Reyna** and the **Affidavit of Rudy Garcia**, are relevant and material on the issue of whether the measure before city council would not have passed.  Both Mr. Reyna and Mr. Garcia testified in their Affidavits they were actually in favor of the zoning modification request.  In fact, the minutes of the City Council on January 4, 2011, indicate that Mr. Reyna and Mr. Garcia actually facilitated and attended meetings between developers and the residents in the community. Furthermore, the minutes from the council meeting on the evening of the vote on March 1, 2011, indicate that Rudy Garcia changed his vote from "No" to "Yes", demonstrating some uncertainty about the vote.

Regardless of any questions about why he changed his vote, in his Affidavit, Mr. Rudy Garcia has now made it abundantly clear that he knew nothing about Irene Baldridge's alleged financial or real property interest, and that if Baldridge had disclosed the conflict of interest or if she had abstained that Mr. Garcia would have changed his vote, and the outcome of the vote would have changed.  Directly addressing

this issue raised by Local Gov't Code Section 771.006, Mr. Garcia stated as follows:

4) 'I have read the facts alleged in the Amended Petition in this case alleging that Council Person Irene Baldridge had, or may have had, a conflict of interest, in that she allegedly represented potential buyers for the land at issue in the vote. If such information had been known to me at the time of the vote on the rezoning request, and/or if Council Person Baldridge had abstained from participating in and voting on the request, then I would have ultimately changed my vote on the matter and voted in support of rezoning the land.

5) 'Because my vote would have changed and because I also believe other council member's votes would have changed if Council Person Baldridge had declared a conflict of interest and/or if had she abstained, the motion to deny the rezoning request would not have passed without Council Person Baldridge's vote.

**The Affidavit of Rudy Garcia, [                    ]**

Similarly, Appellees created a fact issue by offering the Affidavit signed by former Leon Valley City Councilman, Mr. Arthur Reyna, who also testifies that the outcome of the vote would have been completely different if Irene Baldridge had either disclosed her real estate dealings regarding the land in question or if she had abstained from the vote. Mr. Reyna's affidavit provides, in relevant part as follows:

4) 'I have read the facts alleged … that …Irene Baldridge had, or may have had, a conflict of interest, in that she allegedly represented potential buyers for the land at issue in the vote. If such information had been known to me at the time of the vote on the rezoning request or if Council Person Baldridge had abstained from participating in and voting on the request, then I would have changed my vote on the matter and voted in support of rezoning the land.

5) 'Because my vote would have changed and because I also

53

believe other council member's votes would have changed if Council Person Baldridge had declared a conflict of interest or if had she abstained, the motion to deny the rezoning request would not have passed without Council Person Baldridge's vote.

*The Affidavit of Arthur Reyna,*  [          ]

## Further Evidence of a Different Outcome if Baldridge Had Not Participated

**:**  Based upon the Affidavits of Reyna and Garcia as well as the Mayor's prior statements in support of the Plaintiffs' zoning request, there is now more than a scintilla of evidence to raise a genuine issue of material fact that if Irene Baldridge had abstained – as she failed to do – then the vote would have been tied at 2 votes in favor and 2 votes against, and the Mayor would have been required to cast the tie-breaking vote.  It is well established that in 2011, the Mayor was on record as supporting the Plaintiffs' zoning modification measure.  See, for example, the January 4, 2011 Regular City Council Meeting Minutes, January 4, 2011,] where Mayor Chris Riley spoke in favor of the development:

> Mayor Riley stated the Council ***should not allow the opportunity to go by***; it is a ***tremendous opportunity*** to work with developers that get the sustainability aspect.  [Mayor Riley] emphasized the drainage infrastructure cost being too high for the R1 as the primary reason the property has never been developed.  [Mayor Riley] concluded the Council should at least try to find a workable solution; that the Council owes it to the citizens and the City of Leon Valley.  ***[Mayor Riley] noted the City needs this development***.

> City Council Meeting Minutes of the City of Leon Valley, Texas, January 4, 2011, Page 7 of 10, Bates # 01706. (emphasis added).

**Mayor Riley was in Favor of the Development Project in January 2011:**

Less than two months before the March 1, 2011, vote on City Council, Mayor Riley had spoken forcefully in favor of the Plaintiffs' zoning request. It is not only foreseeable, but it is also highly likely that Mayor Riley would have voted in favor of the Plaintiffs' zoning request on March 1, 2011. Although Mayor Riley did not vote on the evening of March 1, 2011, because her vote was not necessary to break the tie, the Affidavit of Arthur Reyna and the Affidavit of Rudy Garcia raise a serious question of whether the measure would have passed or failed. Since we now know they would have voted in favor of the zoning request, which indicates that the zoning vote would have been a tie, with the Mayor casting a vote in favor of the zoning request, and the outcome of the vote would have been completely different if Irene Baldridge had not participated. This meets the criteria to void the city council vote as outlined in Texas Local Gov't Code §171.006, which permits the Court to make a finding that upon final trial, the outcome would have been different had Baldridge not participated. This is all that is necessary to declare void the city council vote.

Although the Appellants argue that Local Gov't Code §171.006 is one of simple arithmetic, which can be accomplished simply by subtracting Baldridge's vote from the total, this overly simplistic model is not supported or mandated by the statute. There is no direct or binding legal authority to support Appellants' interpretation of §171.006. Under the Appellants' interpretation, the Court may only use simple static, arithmetic to interpretation the statute. Appellees argue for a dynamic interpretation of §171.006 of the Local Gov't Code, and one which is much more realistic and is supported by the

55

actual facts given by the persons who actually voted. Recalling that all doubts about the evidence must be resolved in favor of the Appellees, the Court should uphold the decision to deny the plea to the jurisdiction .

Both Arthur Reyna, and Rudy Garcia were council members who actually participated in the March 1, 2011, vote, and under oath, they have stated that the outcome would have been different had Baldridge either not voted, or declared her conflict of interest. This statutory interpretation is much more realistic, and now that two council members have testified that their votes would have changed without Baldridge's participation, the trial court could easily conclude that at least there was a fact question on whether the zoning or rezoning request would <u>not</u> have passed without Council Person Baldridge's vote.

**Conclusion:   There are Numerous Genuine Issues of Material Fact on the Question of Conflict of Interest**

On the one hand, Appellant Baldridge offers her Affidavit [Appellant's Brief] in which she denies having any written contract with Mr. Matlock, who was a prospective buyer of the property. On the other hand, Appellee Daniel Bee in his Affidavit (C.R. V7, 157-173)  offers two (2) direct and unequivocal admissions by party opponent Baldrige, where she not only states that she did, in fact, represent prospective purchasers of the land in question, she also schedules a follow-up meeting at her office to discuss price and other terms of the sale. The first admission by Baldridge comes from a recorded telephone conversation between with Baldridge and Bee that occurred

56

on July , 2010, (See, Reference, Affidavit and attachment on pages 4-5-6). Regarding

the written offer to purchase the land, called a "letter of intent," Baldridge states:

> **I Baldridge:** Where should I send it?
>
> **D. Bee:** Have them send it to you, Irene, and then from you to me and that it maintains your relationship.
>
> **I Baldridge:** Ok…..
>
> **Affidavit of Daniel Bee,** (C.R. V7, 157-173)

Regarding Irene Baldridge's second admission that she represented prospective

purchasers of the property in question, Appellant Daniel Bee's Affidavit (C.R. V7,

157-173] states as follows:

> Present at this August 10, 2010, meeting at the office of International Realty Plus, were Alie Baldridge, Irene Baldridge, Steve Hanan's son and Bill Jackson of Hanan Development Co. and David Matlock of MI Homes….At the beginning of this meeting, Steve Hanan's son, Bill Jackson of Hanan Development Co. and David Matlock all answered, '**Yes, Irene Baldridge was their agent and representing them in this transaction**,' and I then asked Irene Baldridge if Mr. Hanan, Mr. Jackson and Mr. Matlock were her clients, and Irene Baldridge answered, '**Yes, they're my clients.**'
>
> Of these three clients of Irene Baldridge, David Matlock of MI Homes subsequently made an offer to purchase the property, which demonstrates that he was a *bona-fide* prospective purchaser at the time we met at Irene Baldridge's office six (6) months before the vote on March 1, 2011. In June 2011, Mr. Matlock once again approached me to purchase the property for approximately $1.975 million, and once again, he informed me that he wanted Irene Baldridge involved in the transaction.
>
> Affidavit of Daniel Bee, (C.R. V7, 157-173) (emphasis original).

There are two important factual inferences that can be drawn from the conflicting

testimony from Baldridge and Daniel Bee: First, the facts cannot be reconciled; they

57

both cannot be telling the truth. There is therefore a genuine issue of material fact. Since we know that Baldridge never disclosed the alleged representation to city council; that she never recused herself, and that she voted ultimately on the matter, we can deduce that she has every motive or incentive not to disclose the representation to anyone, otherwise she could be potentially liable and/or perhaps lose her official immunity. Although Baldridge denies having any written contract with Mr. David Matlock, she does not deny having "any contract" or "agreement" to represent the other parties who were in attendance at the meeting. If this factual dispute with Mr. Bee's affidavit is taken as true – that she represented the potential buyers of the land, then it would explain why Matlock requested to involve Baldridge in the transaction to purchase the same property approximately three (3) months after Baldridge's vote on city council. [Affidavit of Daniel Bee CR, C.R. V7, 157-173] The one reasonable and favorable inference that can be drawn from this evidence is that Mrs. Baldridge did, in fact, represent Matlock under a verbal or unwritten agreement – and that after the city council vote, led by Baldridge, each of them was reluctant to admit the undisclosed relationship. This simple factual inference would explain all of the conflicting evidence on the issue of: How could Irene Baldridge represent an undisclosed purchaser of the property in question before and after the zoning vote, but yet maintain that she had no "contract"? Also, it is noteworthy that Baldridge always denies having any "written contract" with Matlock and his company M/I homes, but she never identifies the other entities at the meeting. The other entities were an actual development company known

58

as Hanan Development Co.  It is important to note that there is no evidence from either Hanan Development Co. or one of the principals at the meeting, Bill Jackson, that neither Irene Baldridge, Alie Baldridge or International Realty Plus represented them regarding the property in question.   We are faced with conflicting evidence on a jurisdictional issue:   According to Appellee Daniel Bee:  Baldridge solicited a price on the property, so that her undisclosed client[s] could submit an offer; Baldridge then sets up a meeting at her own office to further discuss the terms of the offer to purchase, and then when the meeting takes place at her office, everyone present admits to Appellee Bee that Baldridge is representing the potential buyers.  If Baldridge did not represent the potential buyers, she definitely was very involved in the transaction.   Contrast this information with the Affidavit of Irene Baldridge, where she admits that the phone call to Daniel Bee took place, that she arranged the meeting, that the meeting took place at her office, and at her request, that potential buyers were present at the meeting, and that one of them actually made an offer to purchase the property, but yet, she denies that she represented anyone at the meeting.   For someone who supposedly has "no interest" in the property,  she certainly was involved with both the sellers and potential buyers of the property. .

Regarding the issue of Appellant Baldridge's contract to represent a purchaser of the land in question from the Appellees, once again, the court is faced with two conflicting pieces of evidence on a central jurisdictional fact, and once again, the standard of review from *Miranda* dictates that "[w]hen reviewing a plea to the jurisdiction in which

59

the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, [the court shall] take as true all evidence favorable to the nonmovant. *See Sci. Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 911 (Tex.1997). [The court shall] indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id." Miranda* at 228. When this standard is applied, the conflicting testimony from the parties must be resolved in favor of the Appellees, and the decision of the trial court in denying the plea to the jurisdiction should be affirmed in all respects.

### III.

### APPELLEES' RESPONSE TO ISSUE NO. 3

**The trial court properly denied the City of Leon Valley's Plea to the Jurisdiction because Appellees have properly invoked the Court's jurisdiction for constitutional, nuisance, declaratory judgment and tort claims.**

Appellants incorrectly argue that there is no cause of action for damages under Article 1, §19 of the Texas Constitution by claiming that Appellees' claims for monetary damages do not invoke the trial court's jurisdiction, in accordance with the case of *Smith v. City of League City*, 338 S.W.3d 114 (Tex. App. – Houston [14th Dist.] 2011, pet. Ref'd.). Appellants have failed to take into consideration that Appellees have also pleaded for both injunctive relief and declaratory relief in the ***Second Amended Petition***, . The *Smith* court determined that a plea for declaratory relief was sufficient to

waive immunity and invoke the jurisdiction of the court.

Furthermore, Appellees have alleged that the actions of Appellant City constitute a takings claim, under Article 1 §17 of the Texas Constitution, for which the only adequate remedy is monetary damages.

Appellants' assertion that Appellee's plea for inverse condemnation, taking or nuisance is insufficient is based on Appellants' incorrect reading of appellee's claims. Appellants argue that appellees have alleged a negligence- based nuisance against the Appellant City, which is insufficient to support a finding of inverse condemnation, a taking or nuisance. In fact, Appellees have pleaded that the acts were **both** intentional and negligent; specifically, the actions of the Appellant City and the unknown employees were intentional, while actions of other individual non-governmental Defendants were negligent in nature.

Specifically, Appellees have alleged that Appellants invaded the property in question, without any legal right, permit or permission, or due process and proceeded to dig a trench on the property in question . . . (¶60 Second Amended Petition) and that the City of Leon Valley was fully aware and on notice of the lack of legal authority or permission to enter, take, damage or alter the property in question. (¶62 Second Amended Petitioner) Appellees further alleged that the intentional actions of the defendants have created a public and private nuisance and constitute a trespass for which the appellees seek real-property damages. (¶ 67 Plaintiffs Second Amended Petition)

61

Alternatively, Appellee would assert that any deficiency in the pleading of intent requisite for a takings claim under article 1 § 17 of the Texas Constitution may be corrected by amendment and is not a basis for dismissal of the suit or claim. See *Harris County Flood Control Dist. v. Adam,* 56 S.W.3d 665 (Tex. App.—Houston [14th Dist.] 2001, pet. dism'd w.o.j.)(trial court properly denied plea to the jurisdiction because even if a plaintiff alleged mere negligence rather than intent, that pleading failure could be corrected by amendment); *Barto Watson, Inc. v. City of Houston,* 998 S.W.2d 637 (Tex. App.—Houston[1st Dist.] 1999, pet. denied)(dismissal for lack of jurisdiction was error when failure to plead intent was curable by amendment)

**Appellants have used Motorized Equipment and Unlike *Overby* there is a Sufficient Nexus**

Use of motorized equipment or vehicles to dig the trench on property in question is an adequate nexus between the intentional activity and the damage caused. Appellants cite *San Antonio Water System v. Overby,* 429 S.W.3d 716 (Tex. App.—San Antonio, 2014, no pet.) in support of their claim and argue that the case at bar is similar to *Overby* and that a proper or sufficient nexus between the use of equipment or vehicles and damage to the property has not been alleged by Appellees. However, the facts in *Overby* are easily distinguishable from the facts of this case in that the only damage to the property in the ***Overby*** case was caused by the use of motor vehicles to create a condition that was ***not actually on the Overby's property*** whereas in our case, the damage includes, though is not limited to, the actual intentional trespass on

62

Appellees' property to drive their trucks and to intentionally dig a trench **on Appellee's property**. Also, unlike *Overby*, there is no easement permitting the city to enter Appellees' property for purposes of trenching.

Because the City of Leon Valley equipment or vehicles were intentionally used to dig a trench **on Appellee's property**, which trench is in itself included in the wrongful damage to Appellee's property, there is a direct, sufficient, and proper nexus between the use of equipment or vehicles and the damage to the Appellees' property.

Conversely, Appellants also argue that Appellees' intentional tort claims do not overcome immunity because the Texas Tort Claims Act does not apply to such intentional torts. In support, Appellant cites the case of *Texas Bay Cherry Hill, L.P. v. City of Fort Worth,* 257 S.W.3d 379 (Tex. App.—Fort Worth 2008, no pet.). Appellant's argument, however, fails to acknowledge that the damage caused by the intentional torts alleged by Appellees are so egregious that they fall under the takings clause of the Texas Constitution. Even Appellant's own case, *Texas Bay Cherry Hill,* acknowledges that the doctrine of governmental immunity does not shield a governmental entity from an action for compensation under the takings clause.

<u>**RESPONSE TO APPELLANT'S ISSUE NO. 4**</u>

**A.** <u>**There Are Significant Exceptions To The Legislative Immunity Claimed By Baldridge, And Appellees' Claims Fall Under The Recognized Exceptions To The Legislative Immunity.**</u>

**i. There is no legislative immunity for actions that do not constitute "legislative activity"**

Contrary to the sweeping assertions of Irene Baldridge, legislative immunity is not absolute. The lead case cited by Irene Baldridge and City of Leon Valley, *In Re Perry,* 60 S.W.3d 857 (Tex. 2001) references at least two different exceptions or limitations to legislative immunity – both of which apply to the claims against Irene Baldridge. The **first exception** to absolute legislative immunity that is discussed in the landmark case of *In Re Perry, Id.* involves an inquiry into whether the activity by the elected official constitutes "legislative activity."

> Whether the function the actor performs is legislative depends upon the nature of the act. *Bogan v. Scott-Harris,* 523 U.S. 44, at 55, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998); [remaining citations omitted]. An action is legislative in nature when it reflects a discretionary, policymaking decision of general application, rather than an individualized decision based upon particular facts. *Bogan, Id.*

*In Re Perry, Id.* at 860.

Irene Baldridge has failed to analyze the significant amendments contained in *Plaintiffs' Second Amended Petition*. Whereas previous versions of the Plaintiffs' petitions centered on the March 1, 2011, zoning vote before Leon Valley City Council as the wrongful act which served as the basis for tortious interference and other torts such as conspiracy, the focus in the *Plaintiffs' Second Amended Petition* are actions for

64

which there is no immunity such as the violations of the Texas Open Meetings Act and the Texas Local Government Code. Furthermore, since the *In Re Perry* case establishes that there can be no legislative immunity for non-legislative activities, it is significant that Irene Baldridge has been sued in this matter in four (4) different capacities that have nothing to do with her legislative duties (See, Second Amended Petition, Para. 20). In her non-governmental capacities, Irene Baldridge has been sued as: (a) a real estate agent, (b) a business owner/officer of International Realty Plus; (c) a spouse and business partner of the late Alie Baldridge; and (d) as a legal representative of the Estate of Alie Baldridge. None of these individual and non-governmental capacities has anything to do with Baldridge's legislative activities or her legislative duties.

In her non-legislative capacity as a real estate agent, business owner, and agent and co-conspirator of Alie Baldridge, Irene Baldridge committed four (4) different torts:

(1) tortious interference with a contract – Cause of Action No. 4, Para 99;

(2) tortious interference with a prospective business relationship – Cause of Action No. 5, Para 108;

(3) civil conspiracy to commit tortious interference – Cause of Action No. 9, Para 137; and

(4) civil conspiracy to solicit a bribe or kickback – Cause of Action No. 9, Para 137-38.

None of the four (4) torts committed by Irene Baldridge have anything to do with her vote on city council (i.e., the legislative activity) that Baldridge took on March 1, 2011. In her legislative duties, she was voting on whether or not to rezone the Plaintiffs' land, but when she committed the torts, she was offering to buy the property

65

– tortuously interfering with another real estate broker/agents contracts.  Furthermore, the Affidavit of Daniel Bee, (C.R. V7, 157-173 – See Paragraphs 14 a, b, c on page 9) outlines competent, first-hand summary judgment evidence regarding solicitation of the bribe and conspiracy involving Irene Baldridge and Alie Baldridge that occurred ***after the vote*** by City Council.

If the torts committed by Irene Baldridge – along with the husband, her business partner and sponsoring broker –occurred **after the vote in March 2011,** then  they could not possibly be classified as legislative activity as Baldridge has alleged, and they has no immunity for such – after- the-facts wrongful activity.  To hold otherwise would shield a former legislator for life from liability for any wrongful – and potentially criminal conduct – that the former legislator engages in – even long after voting a particular piece of legislation.  Similarly, Baldridge is trying to use the fact that she once voted on zoning issue to protect her from subsequent – after-the-vote -- tortious conduct such as interference with a contract of a competing real estate broker, and her husbands solicitation of a bribe or kickback in the form of a real estate commission. This is turning legislative immunity on its head, and tantamount to the offensive use of privilege, which as the court is aware, constitutes a waiver of the privilege.

Of course, legislative immunity does not function as a cloak behind which the legislator may enage in wrongful activity with impunity.  A careful reading of the authority heavily relied upon by Baldridge, *In Re Perry, 60 S.W.3d 857 (Tex. 2001),* makes it clear that legislative immunity is not absolute, because it does not and was

66

never intended to cover **non-legislative** activities. All of the four (4) torts for which Irene Baldridge has been sued, center on the actions taken separate and apart from any deliberative, discretionary of policy making, legislative activities; therefore, they are not excused by legislative immunity.

ii.    **No Immunity For Alleged Non-Legislative or Activities That Could Result In Criminal Penalties**: Actions that constitute criminal activity are outside the scope of a public official's discretionary duties, and no reasonably prudent public official would believe that such conduct, which could possibly result in criminal liability, could be done in good faith or could be within the scope of his or her discretionary duties. "When an official with legislative duties engages in activities insufficiently connected with the legislative process to raise genuine concern that inquiry into the motives for his actions would thwart his ability to perform legislative functions, absolute legislative immunity does not apply." *Camacho v. Samaniego, 954 S.W.2d 811 (Tex. App. 1997).* The facts alleged by **Daniel S. Bee** [ C.R. V7, 157-173 ] not only describe actions clearly outside the scope of legitimate legislative activity, they also describe a pattern of corrupt and unlawful behavior by both Irene Baldridge and her late husband Alie Baldridge. Mr. Bee's Affidavit characterizes a long pattern of threats and intimidation used by the Baldridges as they sought "kick backs" or sought to implement a "pay to play" scheme, where the Plaintiffs were solicited to include the Baldridges in the lucrative real estate transaction in exchange for favorable treatment and the exercise of Irene Baldridge's discretion as an elected official with

67

respect to the Plaintiffs zoning application before city council. See, **The Affidavit of Daniel S. Bee**, [C.R. V7, 157-173] Paragraphs 13-14, pg. 8-9. These facts are sufficient to create a fact issue on the dispute over conflict of interest, official or legislative immunity and the Open Meeting Act violations.

### iii. Legislative immunity is voluntarily waived by offering testimony in a suit.

*In Re Perry, Id.* the lead case cited by Irene Baldridge for claimed legislative immunity also discusses a **second important limitation and exception to legislative immunity**. According to *In Re Perry,* legislative immunity can be voluntarily waived by offering testimony a suit.

> …authority suggests that a legislator's testimonial privilege may be subject to limited, very closely guarded exceptions when invidious legislative intent is an element of a cause of action. See *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 268, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Marylanders for Fair Representation, Inc. v. Schaefer*, 144 F.R.D. 292, 301 n. 19, 305 (D.Md.1992).

*In Re Perry*, Id. at 861.

The Texas Supreme Court cites both the *Arlington Heights* case and the *Marylanders* case where both courts held that the legislative immunity to suit was waived by voluntarily testimony offered by the public officials. In our case, Irene Baldridge has not only testified by way of her Affidavit (See, "Exhibit A" to *Irene*

68

*Baldridge's First Amended Plea to the Jurisdiction and the Motion for Summary Judgment)*, she has also specifically testified concerning her legislative activities, deliberations, discretionary acts. (See Page 3 of Affidavit of Irene Baldridge). This constitutes a voluntary waiver of any legislative immunity she might claim.

Furthermore, TOMA specifically authorizes actions against members of a governmental body. In **Riley v. Comm'rs Court**, 413 S.W.3d 774 (2013 Tex. App. LEXIS 6292; 2013 WL 2348272), the court acknowledged that TOMA authorizes actions against members of a governmental body. Plaintiffs contend that this case, where there are five (5) separate violations of TOMA – each of which involves Irene Baldridge – and four (4) different torts including possible criminal conduct, in which Irene Baldridge and her late husband Alie Baldridge are central co-conspirators constitute the special circumstances for a waiver of legislative and governmental immunity, which the Court references in *In Re Perry*. This exception is not only in the public interest, but it is in keeping with the broad application and intent of the Texas Open Meetings Act, which was intended to safeguard the public interest and shine the light on corrupt practices.

## CONCLUSION

Appellants City of Leon Valley and Councilmember Irene Baldridge, are not entitled to immunity because each of the causes of action asserted against the Appellants fall within recognized constitutional and statutory exceptions to sovereign immunity,

69

official immunity and legislative immunity.

Under the applicable standards of review under *Tex. Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217 (Tex. 2004), both Appellant Irene Baldridge's and the City of Leon Valley's claims of immunity fail because there genuine issues of material fact on jurisdictional issues.

With five (5) separate violations of the Texas Open Meetings Act properly alleged and supported by sufficient, credible evidence, there is no immunity for the City of Leon Valley, because the Texas Open Meeting Act authorizes, actual monetary damages, injunctive, mandamus and declaratory relief as well as attorneys fees and taxable court costs.

Appellant Baldridge's activities, including her failure to disclose her conflict of interest and her failure to recuse herself from the city council vote on the Appellees property all fall within recognized exceptions to the absolute and legislative immunity.

## PRAYER

WHEREFORE PREMISES CONSIDERED, the Appellees jointly pray that the Court shall affirm the decision of the trial court denying the Plea to the Jurisdiction, filed by City of Leon Valley, Texas, Unknown Employee(s) of the City of Leon Valley, and Irene Baldridge and affirm the denial of the Appellant Irene Baldridge's Second Amended Plea to the Jurisdiction; and for such further relief, in law and in equity, to which the Appellees may show themselves justly entitled

70

Respectfully Submitted,


DIAZ JAKOB, LLC
The Historic Milam Building
115 E. Travis St, Suite 333
San Antonio, TX 78205
Tel. (210) 226-4500
Fax (210) 226-4502
E-service/E-Mail:
ORD@diazjakob.com


By:_____
O/ RENE DIAZ
State Bar No. 05804775
Attorney for Appellees


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument has been served in accordance with the Texas Rules of Appellate Procedure on:_____**12TH**_____February, 2015, to the following:

Patrick Bernal
Clarissa M. Rodriguez
DENTON NAVARRO ROCHA BERNAL HYDE & ZECH, P.C.
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
210/227-3243 phone
210/225-4481 Facsimile
Email: patrick.bernal@rampage-sa.com
Email: clarissa.rodriguez@rampage-sa.com
COUNSEL FOR APPELLANTS

Darby Riley
Riley & Riley, Attorneys at Law
320 Lexington Avenue
San Antonio, Texas 78215
*Attorneys for Irene Baldridge*

O. RENE DIAZ